UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JUDITH TAYLOR | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:05-CV-730 RM |
| | ) | |
| J.C. PENNEY COMPANY, INC., | ) | |
| | ) | |
| Defendant | ) | |

OPINION and ORDER

This cause is before the court on the motion of J.C. Penney Company, Inc. for summary judgment on Judith Taylor's claims against the company. Ms. Taylor, who is proceeding *pro se*, has alleged that she while she was employed at Penney's, she was the victim of discrimination based on her race and religion and was wrongfully discharged in retaliation for having reported the discrimination to management, all in violation of 42 U.S.C. § 2000e *et seq.* Penney's argues Ms. Taylor can't establish a prima facie case of discrimination or retaliation and the company has a legitimate, non-discriminatory reason for her discharge. Ms. Taylor filed a response in which she says she has carried her burden of establishing her claims and Penney's motion should be denied.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Turner v. J.V.D.B. & Assoc., Inc., 330 F.3d 991, 995 (7th Cir. 2003). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in her favor. Lawrence v. Kenosha County, 391 F.3d 837, 841-842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'") (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

FACTS

The following facts are taken from the summary judgment record and are viewed as favorably to Ms. Taylor as is reasonable. Ms. Taylor worked at Penney's

2

University Mall Store in Mishawaka, Indiana from August 1987 until her discharge in January 2005. During that time, she received various promotions and at the time of her discharge was a senior customer service specialist.

Ms. Taylor relies on three incidents to support her claims. She first cites to July 2003 when she received a message on her pager containing the letters KKK and the number 666, which according to Ms. Taylor "is the mark of the beast in the Bible, it is the sign of Satan." She says she viewed the incident as religious discrimination and complained to Store Manager Mike Liegel, who indicated to her that he didn't know what the message meant. Ms. Taylor says the pager system at Penney's was discontinued shortly after that time.

Ms. Taylor next complains of verbal harassment by co-worker Connie Emmons. Ms. Taylor references an incident in November 2004 when Ms. Emmons accused her of improperly leaving racks out on the showroom floor. Ms. Taylor claims co-worker Pat Casey left the racks in the aisle, but Ms. Taylor was blamed because, according to Ms. Taylor, Ms. Emmons and Ms. Casey were friends and together had sent the 666 pager message the previous year. Ms. Taylor says she complained to Susan Ferguson in Penney's Human Resources Department about being verbally abused and harassed by Ms. Emmons.

Lastly, Ms. Taylor says she was wrongfully discharged in retaliation for complaining to Penney's management about her mistreatment by co-workers. Ms. Taylor maintains Penney's based its termination decision on incorrect information it received about a January 2005 incident with a customer. Ms. Taylor's version

3

of the January incident is as follows: a co-worker called her out of her assigned work area to speak with a customer who was upset about a sales promotion; following some discussion, Ms. Taylor told the customer she couldn't get the discount she was requesting and the customer then yelled at and complained of poor treatment by Ms. Taylor; after a few moments, manager Kevin DeFrain arrived to talk to the customer, and when Mr. DeFrain explained that the requested discount wasn't available, the customer starting yelling for someone to call the police; Mr. DeFrain called security, and the security officer walked the customer to her car because the store was closed and the lights were out.

Penney's management undertook an investigation of the incident the following week. Store manager Mike Liegel interviewed and took written statements from the customer and employees at the scene, including Ms. Taylor. Ms. Taylor's rendition of the incident differed significantly from the statements provided by the other witnesses, all of whom reported that Ms. Taylor was the aggressor in the exchange. Ms. Taylor maintains those statements were untrue.

Ms. Taylor was suspended and later received a letter, dated January 24, 2005, informing her of her dismissal based on the following:

> On Saturday evening, January 8th of 2005, Judith Taylor got into a dispute with a customer. Present, in addition to the customer, were the Manager on Duty, Kevin DeFrain, and two sales associates. They were joined later by a Loss Prevention Officer. Based on written statements by those who witnesses this incident, we will dismiss Judith Taylor for the following reasons:
>
> 1.   [Ms. Taylor] was argumentative with the customer and overstepped her realm of responsibility. She interfered with the

4

> Manager, Kevin DeFrain's, ability to deal with the customer's concern. Despite being told by Kevin DeFrain to cease her arguing with the customer, [Ms. Taylor] continued to escalate the situation.
>
> 2. [Ms. Taylor] displayed volatile behavior when she picked-up an object and began waiving it in the air during her confrontation with the customer.
>
> 3. [Ms. Taylor] was physically abusive toward Loss Prevention Officer Scott Marko when she struck him several times in the face and chest. This officer was called to the department by Manager Kevin DeFrain to help diffuse the situation.

Ms. Taylor refused to sign the letter and claims she was falsely accused of engaging in an argument with the customer and insists she never displayed volatile behavior because such behavior is against her religion. Ms. Taylor maintains her discharge was in retaliation for her complaints to management about her mistreatment by co-workers.

Ms. Taylor filed a complaint with the EEOC in April 2005 and, after receiving her right to sue letter, filed suit in this court alleging she had been discriminated against based on her race and religion and had suffered retaliation in violation of Title VII. Ms. Taylor seeks a permanent injunction enjoining Penney's from violating Title VII, reinstatement, actual damages, consequential damages, punitive damages, and an award of costs and attorney fees.

Penney's seeks judgment on Ms. Taylor's claims, arguing that Ms. Taylor can't establish a prima face case of discrimination or retaliation, the company has legitimate, non-discriminatory reasons for its actions, and Ms. Taylor hasn't carried her burden of demonstrating pretext.

5

DISCUSSION

Ms. Taylor contends Penney's engaged in various discriminatory employment practices in violation of 42 U.S.C. § 2000e *et seq.* She bases her claims on the following incidents: (1) the message on her pager in July 2003; (2) the November 2004 encounter with Connie Emmons; and (3) her wrongful discharge in January 2005. Ms. Taylor maintains those actions were taken against her because of her race and religion and in retaliation for having complained to management about her co-workers' actions.

*(a) Discrimination*

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e(a)(1). Ms. Taylor can prevail on her Title VII claims "by putting in enough evidence, either direct or circumstantial, of discriminatory motivation to create a triable issue or by establishing a prima facie case under the *McDonnell Douglas* formula." Rudin v. Lincoln Land Community Coll., 420 F.3d 712, 719 (7th Cir. 2005). The *McDonnell Douglas* formula requires Ms. Taylor to show that (1) she belongs to a protected class; (2) she was performing her job satisfactorily, (3) she suffered an adverse employment action, and (4) a similarly-situated employee outside her protected

class was treated more favorably. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

If Ms. Taylor establishes a prima facie case of discrimination, the burden shifts to Penney's to set forth a legitimate, non-discriminatory reason for its action. Burks v. Wisconsin Dep't of Transp., 464 F.3d 744, 751 (7th Cir. 2006). If Penney's meets its burden, the burden shifts back to Ms. Taylor to demonstrate that Penney's proffered reason is a pretext for intentional discrimination. *Id.* "While the *McDonnell Douglas* approach is often called a 'burden shifting' method of proof, the ultimate burden of persuading the trier of fact that [Penney's] intentionally discriminated against [Ms. Taylor] remains at all times with [Ms. Taylor]." Stockett v. Muncie Transit, 221 F.3d 997, 1001 (7th Cir. 2000).

As an initial matter, Penney's argues that Ms. Taylor's claim of discrimination relating to a July 2003 incident is time-barred based on her filing of her EEOC charge on April 25, 2005. A person must initiate a Title VII claim by filing a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred," or within 300 days of the unlawful practice when the proceedings are initiated with a state or local agency that has the power to grant the requested relief. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 445 (7th Cir. 1994) ("In a deferral state, such as Indiana, a charge must be filed within 300 days of the occurrence of the act that is the basis of the complaint."). Even so, the 300-day filing requirement "is not a jurisdictional prerequisite to filing a federal

7

lawsuit, but rather, is more akin to a statute of limitations." <u>Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Med. Sch.</u>, 167 F.3d 1170, 1174 (7th Cir. 1999). Waiver, estoppel, and equitable tolling may be applicable under appropriate circumstances, *id.*, but Ms. Taylor hasn't argued that any of those doctrines would or should apply in this case. Instead, she appears to argue that her claims fall under the continuing violation theory, which "allows a plaintiff to get relief for time-barred acts by linking them with acts within the limitations period." <u>Shanoff v. Illinois Dep't of Human Servs.</u>, 258 F.3d 696, 703 (7th Cir. 2001).

Ms. Taylor relies on two events as evidence of discrimination — one in July 2003 and another in November 2004 — but she hasn't offered any explanation of how those events are linked together other than to say that "the events started in July 2003." Pltf. Memo., at 3. Ms. Taylor labels the July 2003 receipt of the 666 pager message as religious discrimination and says in November 2004 Connie Emmons yelled at her about an improperly placed clothes rack. Ms. Taylor believes that Connie Emmons was involved in the July 2003 pager incident, but provides nothing more than her suspicions in this regard. And while Ms. Taylor claims Ms. Emmons harassed her, she hasn't provided any support for a finding that the November 2004 disagreement with Ms. Emmons was somehow related to the July 2003 pager message. Ms. Taylor's EEOC charge, filed on April 25, 2005, includes claims of discrimination and retaliation that took place from "*Earliest* 11/01/04" through "*Latest* 1/24/05." Ms. Taylor hasn't established that the

events complained of — one in July 2003 and another more than a year later in November 2004 — constitute a continuing violation, so her claim of discrimination in July 2003 is time-barred.

Penney's next argues Ms. Taylor can't establish a prima facie case of racial or religious discrimination because no similarly-situated employees were treated more favorably. Ms. Taylor claims that in November 2004 she suffered racial and religious harassment and discrimination, but she hasn't set forth any instances of having been subjected to conduct of an apparent racial or religious character or purpose that might provide support for her claims of harassment and discrimination. Neither has Ms. Taylor pointed to any similarly-situated employees who were treated more favorably.

Ms. Taylor reports in her EEOC charge that she is a member of the Pentecostal faith and claims in her complaint that she was harassed due to her religious faith. Title VII makes it unlawful for an employer to discriminate because of that individual's religion, 42 U.S.C. § 2000e-2(a)(1), and defines the term "religion" as including "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). Ms. Taylor hasn't set forth any specific incidents of discrimination or harassment based on or relating to her religion or her religious beliefs, other than to claim that she didn't fight and wasn't abusive or hostile because "this is against plaintiff's religion." Pltf. Stmt. of Undisputed Facts, ¶ 31; Pltf. Memo., p. 2. Ms. Taylor hasn't alleged or argued that Penney's refused to accommodate her religious practices in some way; she hasn't alleged or

9

established that a similarly-situated employee of a different religion was treated more favorably; nor has she offered any evidence to support a finding that she suffered discriminatory treatment or discharge because of her religious beliefs or observances. Ms. Taylor's belief that she was discriminated against because she is a member of the Pentecostal faith, without more, is insufficient to support an inference of religious discrimination or create a genuine issue for trial. *See* Venters v. City of Delphi, 123 F.3d 956 (7th Cir. 1997).

Ms. Taylor's only basis for alleging discrimination based on race is that she is the sole African-American on the management team and she was yelled at by Connie Emmons, who is white. Ms. Taylor hasn't alleged or argued that she suffered harassment involving racial remarks or conduct of apparent racial character or purpose, or that she was subjected to verbal abuse or racial slurs or insults; she hasn't cited to any incidents of mistreatment directed at her solely because of her race; and she hasn't established that any similarly-situated employee outside her racial class was treated more favorably. Ms. Taylor's belief that she was the victim of discrimination because she is black and the majority of other employees are white is insufficient to create a genuine issue for trial. *See* Olsen v. United Parcel Serv., 892 F.2d 1290, 1296 (7th Cir. 1990) ("The mere fact that an employee is white and a single general statement that black employees were seldom disciplined does not, in our view, raise a genuine issue as to racial discrimination, for no rational trier of fact could find for the [plaintiff] on such scant evidence."); Lake v. Fairview Nursing Home, Inc., No. 96C8546, 1997 WL

10

619834, at *4 (N.D. Ill. Sept. 12, 1997) ("Lake's mere suspicion that her supervisors discriminated against her – because she is black and they are white – is insufficient to create a genuine issue for trial. Lake must do more than show that there is some metaphysical doubt as to the material facts.").

Ms. Taylor must identify "with reasonable particularity the evidence that precludes summary judgment," but she hasn't done so. Brasic v. Heinemann's, Inc., 121 F.3d 281, 285 (7th Cir. 1997); *see also* Estate of Moreland v. Dieter, 395 F.3d 747, 759 (7th Cir. 2005) (the court "will not scour a record to locate evidence supporting a party's legal argument"). Ms. Taylor hasn't presented or pointed to direct evidence of intentional racial or religious discrimination or established a prima facie case of racial or religious discrimination under the *McDonnell Douglas* burden shifting method of proof. Penney's is entitled to judgment on Ms. Taylor's discrimination claims.

### (b) Retaliation

42 U.S.C. § 2000e-3(a) provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because [she] has opposed any practice made an unlawful employment practice by [Title VII]." Thus, Title VII "protects persons not just from certain forms of job discrimination [and harassment], but from retaliation for complaining about the types of discrimination it prohibits." Miller v. American Family Mut. Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000). Retaliation may be established under the direct

11

method by presenting evidence of (1) statutorily protected activity, (2) an adverse employment action, and (3) a causal connection between the two, Haywood v. Lucent Tech., Inc., 323 F.3d 524, 531 (7th Cir. 2003), or under the indirect method by showing that "after [s]he complained of discrimination, [s]he, and not any other similarly situated employee who did not complain, was subject to an adverse action although [s]he was performing up to the employer's legitimate job expectations." Roney v. Illinois Dep't of Transp., 474 F.3d 455, 459 (7th Cir. 2007).

If Ms. Taylor meets her burden, "the burden of production shifts to [Penney's] to come forward with a legitimate, non-invidious reason for the adverse employment action. Although the burden of production shifts to the defendant under this method, the burden of persuasion rests at all times on [Ms. Taylor]." Haywood v. Lucent Tech., Inc., 323 F.3d at 531.

Ms. Taylor says she was discharged in January 2005 because in November 2004 she called Penney's corporate offices to complain about being harassed by co-workers. Ms. Taylor's belief in this regard, without more, is insufficient to establish a causal connection between her complaints to management and her termination. "Speculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation; instead, plaintiffs must produce facts which somehow tie the adverse decision to the plaintiffs' protected actions." Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 919 (7th Cir. 2000); *see also* Burks v. Wisconsin Dep't of Transp., 464 F.3d 744, 759-760 (7th Cir. 2006) ("the mere fact

that one event preceded another does nothing to prove that the first event caused the second; the plaintiff also must put forth other evidence that reasonably suggests that her protected speech activities were related to her employer's discrimination and termination."). Ms. Taylor hasn't presented any direct evidence of a retaliatory motive, cited to facts sufficient to tie the loss of her employment to her protected activity, or set forth evidence sufficient to create a "convincing mosaic of circumstantial evidence" that would establish a prima facie case of retaliation. Flannery v. Recording Industry Ass'n of America, 354 F.3d 632, 643 (7th Cir. 2004) ("retaliation claims must be based on facts, and not on speculative theories").

Neither has Ms. Taylor demonstrated retaliation under the indirect method of proof. Penney's contends Ms. Taylor can't establish a prima facie case of retaliation because she can't demonstrate that a similarly-situated employee who didn't complain was treated more favorably. Ms. Taylor hasn't challenged or addressed Penney's claim or pointed to any similarly-situated, non-complaining employee who was treated more favorably. Ms. Taylor hasn't carried her burden of establishing a prima facie case of retaliation and Penney's is entitled to summary judgment on her retaliation claim.

Because Ms. Taylor hasn't established a prima facie case of discrimination or retaliation, the court need not address Penney's argument that it had a legitimate, non-discriminatory reason for its termination of Ms. Taylor's employment.

13

CONCLUSION

Ms. Taylor hasn't carried her burden and can't prevail on her discrimination or retaliation claims: she hasn't established a prima facie case of discrimination or retaliation via the direct or indirect methods of proof. Therefore, the court GRANTS the motion of J. C. Penney Company, Inc. for summary judgment on Ms. Taylor's claims against the company [docket # 51] and DIRECTS the Clerk to enter judgment accordingly.

SO ORDERED.

ENTERED:   May 3, 2007

    /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court